# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00682-CR

**Nnamdi Royce Washington, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 64,770, HONORABLE FANCY JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Nnamdi Royce Washington was convicted by a jury of two counts of aggravated sexual assault of a child younger than 14 years of age, a first-degree felony. *See* Tex. Penal Code § 22.021(a)(1)(B), (2)(B). After finding that Washington had previously been convicted of a felony, the court assessed punishment at 50 years' imprisonment for each count and ordered the sentences be served consecutively. *See id.* §§ 22.021(e), 12.42(c)(1). On appeal, Washington claims that the trial court erred in: (1) overruling his objections that the State asked two venire persons improper commitment questions, (2) overruling his hearsay objection to the testimony of a State's witness, (3) admitting evidence of an extraneous offense, (4) refusing his request to take an expert witness on voir dire, and (5) overruling his objection to the qualification of a police detective as an expert witness. We affirm the trial court's judgments of conviction.

## BACKGROUND

The jury heard evidence that, on or about February 1, 2006, Patty Competello went to work an overnight shift, leaving her twelve-year-old daughter, S.R., at home with Washington, who was twenty-four years old. S.R. described him as being a friend of Competello's, but another witness said he was Competello's boyfriend. Washington was in the bedroom listening to music, and S.R. came in and laid down on the bed to listen. As S.R. was falling asleep, Washington started touching her on her buttocks, legs, and vagina. He then removed her clothes, took off his pants, and placed his penis inside her vagina. S.R. testified that she had never had sexual intercourse before and that "[i]t hurt a little bit." Later that night, Washington had anal intercourse with S.R. S.R. said she was "bleeding a little bit," but she did not tell anyone what had happened because she "was scared."

Thus began a sexual relationship between S.R. and Washington that lasted for a year and one-half, until shortly before S.R.'s fourteenth birthday. They met at Competello's apartment or at various motels, and when S.R. was thirteen years old, Washington began giving her methamphetamine that they would smoke together when they had sex. S.R. said she cared for Washington, but as time went by, she grew ashamed, embarrassed, and frightened. She began to think Washington was just using her, and she started cutting herself and acting out sexually.

When S.R. was fourteen, she told Nicole Hollowell, a family friend, that Washington had raped her; Competello was present but took no immediate action. Competello said she delayed reporting the abuse because she was addicted to drugs, but several months later, she told S.R.'s principal and a school police officer what had happened. Washington was indicted on three counts of aggravated sexual assault of a child. *See id.* § 22.021(a)(1)(B)(2)(B).

2

**DISCUSSION**

**Commitment questions**

In his first two issues, Washington argues the trial court erred in overruling his objections to certain questions asked by the State of two prospective female jurors. He contends the State asked improper commitment questions about how the jurors thought a victim of sexual assault should behave and asked another prospective juror how that juror would expect a witness to act on the witness stand.

The trial court has broad discretion over the process of selecting a jury, and we will not reverse its decisions about the propriety of a particular question absent an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). A trial court abuses its discretion only if it prohibits a proper question about an appropriate area of inquiry. *Id.* A question is proper if it attempts to discover a juror's views on an issue applicable to the case. *Id.* A commitment question commits a "prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). We first ask whether the question was a commitment question and, if so, then look to see whether it was limited to facts that might lead to a valid challenge for cause. *Id*. at 182-83.

None of the three questions propounded by the State to which Washington objected was a commitment question because none of them contained any facts. Because the objected-to questions were not commitment questions, we need not inquire further into whether they were improper commitment questions. Washington's first and second issues are overruled.

3

**Nicole Hollowell's testimony**

Washington contends the trial court erred in overruling his hearsay objection to Nicole Hollowell's testimony that S.R. in the winter of 2008 told her Washington had raped her. The State asserts S.R.'s statement was an excited utterance, but Washington asserts that S.R.'s statement cannot qualify as an excited utterance because it was made years after the first assault, in response to Hollowell's question.

We review the trial court's ruling admitting Hollowell's testimony under an abuse of discretion standard and will uphold the court's decision if it falls within the zone of reasonable disagreement. *See Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). Further, the erroneous admission of evidence will not result in reversal if the same facts were received elsewhere without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Barnes v. State*, 165 S.W.3d 75, 81 (Tex. App.—Austin 2005, no pet.).

S.R. testified about the first time Washington sexually assaulted her and his continuing course of sexual assaults from the time she was 12 until she was almost 14 years old. She also stated, without objection, that she told Hollowell and her mother that she "got raped." Accordingly, even if the trial court erred in admitting Hollowell's testimony as an excited utterance,[1] such error would not be grounds for reversal because the same facts were received elsewhere without objection. *See Leday*, 983 S.W.2d at 718. Washington's third issue is overruled.

---

[1] Rule 803(2) permits admission of a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). The critical issue is not whether the statement was made in response to a question or separated in time from the event but whether the declarant was still dominated by the emotions, excitement, fear, or pain caused by the event when she spoke. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003).

**Evidence of extraneous offenses**

In his fourth issue, Washington complains the trial court erred in admitting testimony that he committed extraneous offenses, that is, S.R.'s testimony that he supplied drugs to her in the course of his sexual assaults. In a hearing outside the jury's presence, the State advised the court that it intended to offer evidence that Washington supplied drugs to S.R. and Competello. Washington objected that the evidence was irrelevant, related to extraneous bad acts and was improper evidence of bad character, and would be unfairly prejudicial. *See* Tex. R. Evid. 401, 403, 404.**[2]** The trial court barred the State from offering evidence about Competello but allowed the evidence about Washington giving drugs to S.R. On appeal, Washington argues that the probative value of such evidence was outweighed by its prejudicial effect and that it confused the issues and misled the jury.

We review a trial court's decisions on the admission of evidence for an abuse of discretion and uphold a ruling that is within the zone of reasonable disagreement. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "Same-transaction contextual evidence," the evidence that proves the circumstances surrounding the offense, is generally admissible. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). Evidence of extraneous offenses may be admissible as same-transaction contextual evidence if "'several crimes are intermixed, or blended with one

---

**[2]** Rule 401 defines "relevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Rule 403 bars the use of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* R. 403. And rule 404 provides that character evidence, including evidence of other bad acts, is not admissible to prove a person's character, but may be admissible for other purposes, such as showing motive, opportunity, intent, plan, knowledge, or identity. *Id.* R. 404(b).

another, or connected so that they form an indivisible criminal transaction.' In that situation, 'the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.'" *Prible*, 175 S.W.3d at 731-32 (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)).

The State argued that evidence that Washington sometimes gave S.R. drugs when they met for sex demonstrated his efforts to lower S.R.'s inhibitions, provided context for the offense, and aided the jury in understanding the circumstances under which the offense was committed. We agree with the State that evidence that Washington provided S.R. with methamphetamine helped fill in the gaps and explain the circumstances surrounding the offense.[3] *See id.* at 732. The trial court did not err in admitting S.R.'s testimony that Washington provided her with drugs. We overrule Washington's fourth issue.

**Voir dire of an expert**

In his fifth issue, Washington asserts the trial court erred by not allowing him to conduct a voir dire examination of Courtney Wright, a forensic interviewer at the Children's Advocacy Center of Central Texas (CAC), arguing he had "an absolute right to take [Wright] on

---

[3] *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005) ("Steve and Nilda's murders are so intertwined with the deaths of their children that the State's case might well be incomplete without some mention of the children's presence in the home. . . . [T]estimony about the children's deaths fills in gaps of the interwoven events . . . and thus helps the jury to understand the case in context."); *see also Freeman v. State*, No. 10-12-00183-CR, 2013 Tex. App. LEXIS 8566, at *6-9 (Tex. App.—Waco July 11, 2013, no pet.) (mem. op., not designated for publication) (evidence that defendant showed his teenage daughter pornographic materials and provided her alcoholic beverages showed his efforts to convince victim that sexual relationship was appropriate and prevent her from making outcry; "we believe that the complained-of evidence provided pertinent background information that assisted the jury in understanding the underlying sexual assaults").

voir dire prior to her offering any opinion evidence to test her qualifications, training and experience to offer them." We disagree.

Prior to an expert giving an opinion or disclosing underlying facts or data, a criminal defendant against whom the opinion is to be offered shall be allowed to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based. Tex. R. Evid. 705(b). Wright was asked to explain the purpose of CAC and describe the facility. When Wright was asked about CAC's procedures when a child comes for an interview, Washington objected "to the relevance" of her testimony and asked to take her on voir dire, a request the trial court denied. Wright testified that she interviewed S.R. and described her demeanor during the interview but did not testify to anything S.R. said or give any opinion regarding S.R. or the offense. Further, Washington's request to conduct a voir dire examination of Wright was based solely on relevance and was not a request for a Rule 705(b) hearing outside the jury's hearing to explore the "underlying facts or data" of an expert's opinion. *See Jenkins v. State*, 912 S.W.2d 793, 814 (Tex. Crim. App. 1995) (op. on reh'g). The trial court did not abuse its discretion in denying Washington's request to voir dire Wright. Washington's fifth issue is overruled.

**Qualification of Detective Bracewell as an expert**

In his sixth issue, Washington complains the trial court erred in overruling his objection to police detective Tammy Bracewell's qualifications as an expert. We disagree.

Detective Bracewell testified that, for four and one-half years, she primarily had investigated sex crimes against children. When asked what training she had in the area of child sexual abuse, she stated she had approximately 4,000 combined hours of training and education.

7

Detective Bracewell was asked if children who had been victims of sexual abuse sometimes act out sexually. Washington objected that the question was outside Detective Bracewell's expertise and that she had not been qualified as an expert. The court overruled Washington's objection and granted his request for a running objection to the detective's testimony. Detective Bracewell then testified that it is not uncommon for child victims of sexual assault to be promiscuous or to act out sexually with many different people. She noted that such children have a lot of problems in school, have anger and rage issues, use drugs, and have trouble in general. Detective Bracewell further stated that child victims of sexual assault will sometimes make a partial disclosure of the assault, describing only part of what happened but not the entire event. The detective did not, however, tie her testimony to S.R.

Washington objected to Detective Bracewell's testimony regarding child assault victims making partial disclosures, asserting that it was outside the detective's training and expertise, and the trial court allowed him to take the witness on voir dire. Washington asked whether Detective Bracewell had any training, classroom hours, or study of literature as to why child victims make partial disclosures. Detective Bracewell responded that she had taken about 20 classroom hours at the Crimes Against Children Conference, the largest conference in the world for crimes against children. Washington did not re-urge his objection, and Detective Bracewell answered the question why child victims of sexual assault sometimes make only partial disclosures.

Texas Rule of Evidence 702 provides for the admission of expert testimony if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or a fact in issue. *See* Tex. R. Evid. 702. A witness qualified as an expert by knowledge,

skill, experience, training, or education may testify in the form of an opinion or otherwise. *Id.* The trial court must be convinced that: (1) the witness qualifies as an expert because of her knowledge, skill, experience, training, or education; (2) the subject matter is appropriate for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010); *Jessop v. State*, 368 S.W.3d 653, 670 (Tex. App.—Austin 2012, no pet.). Washington argues the State failed to demonstrate that Detective Bracewell was qualified as an expert.

When considering whether a witness is qualified to testify as an expert, the trial court should first inquire whether the witness has a sufficient background in a particular field and whether her background goes to the matter on which she is to give an opinion. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The proponent must then establish that the expert has knowledge, skill, experience, training, or education concerning the specific issue that qualifies her to give an opinion on that subject. *Id.* at 132. The focus is on the expert's familiarity with the subject matter at issue. *Id.* at 133. A trial court has considerable discretion in determining whether a witness is sufficiently qualified to assist the jury as an expert on a specific topic. *Id.* at 136.

Detective Bracewell testified that she had primarily investigated sex crimes against children for four and a half years; she had about 4,000 combined hours of training and education in the area of child sexual abuse; and she had taken approximately 20 classroom hours at the world's largest conference about crimes against children. Given Detective Bracewell's years of experience, training, and education in the area of child sexual abuse, we conclude the trial court did not abuse its discretion in permitting Detective Bracewell to testify. Washington's sixth issue is overruled.

9

## CONCLUSION

Having overruled all of Washington's issues on appeal, we affirm the judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   January 30, 2014